IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Julius B. Nesbitt, | ) |
|         Plaintiff, | ) Civil Action No. 6:09-2350-RBH-WMC |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| A. Lane Cribb, et al., | ) |
|         Defendants. | ) |

This matter is before the court on the motions for summary judgment of the defendants. The plaintiff, a federal pre-trial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983. The plaintiff alleges denial of adequate food and medical care during his incarceration at the Georgetown County Detention Center ("GCDC").

The plaintiff, who is being held at the GCDC, initiated this lawsuit against numerous defendants on September 10, 2009. On November 25, 2009, defendants A. Lane Cribb, Major Morton, Chief Michael Schwartz, and Captain Wineglass moved for summary judgment (doc. 36). On November 30, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On January 4, 2010, the plaintiff filed his opposition to the defendants' motion for summary judgment.

On January 12, 2010, defendant Dr. Thomas S. Rives, incorrectly identified as Dr. Reese, filed a motion to dismiss or, in the alternative, for summary judgment. A *Roseboro* order was issued on January 12, 2010. On January 25, 2010, defendant Carol Rodgers filed a motion for summary judgment. Another *Roseboro* order was issued on January 27, 2010. On January 29, 2010, defendants ARAMARK Correctional Services, LLC and Ernst Walker filed a motion for summary judgment (doc. 77), and a *Roseboro* order was issued on February 1, 2010. Finally, on February 2, 2010, defendant Southeastern Service Group, Inc. filed a motion for summary judgment (doc. 81), and a *Roseboro* order was issued on February 3, 2010. Despite receiving the explanation of the procedure and possible consequences on four separate occasions, the plaintiff elected not to respond to any of these motions. Accordingly, on February 24, 2010, this court issued an order advising the plaintiff that he did not respond to the motions by March 22, 2010, the claims against these defendants would be dismissed for failure to prosecute. The plaintiff did not file any response to the motions.

## **FACTS PRESENTED**

The plaintiff is a federal pre-trial detainee who was jailed at the Charleston County Detention Center until he was transferred to Georgetown County Detention Center ("GCDC") on June 12, 2009 (Rives aff. ¶¶ 3, 5). His transfer information listed his medical problems as non-insulin dependent diabetes mellitus, hypertension, coronary artery disease, and an inguinal hernia. *Id.* ¶ 5. As part of his examination and evaluation, Dr. Thomas S. Rives, an independent contractor with Southeastern Service Group, Inc., providing medical care at GCDC, confirmed that these medical conditions existed and specifically found that the plaintiff's hernia was reducible, not life threatening, and that repair surgery would be considered elective. *Id.* ¶¶ 2, 9. Additionally, because the plaintiff was

a diabetic, Dr. Rives ordered that he receive a 2,800 diabetic/calorie-controlled diet as well as a snack bag. *Id.* ¶ 10.

With regard to the plaintiff's pre-existing hernia, Dr. Rives' examinations always found the hernia to be reducible. *Id.* ¶¶ 9, 14, 16, 30. However, Dr. Rives petitioned the U.S. Marshals Service to allow the plaintiff to be examined by a surgeon. Dr. Rives' request was granted, and the plaintiff was seen by surgeon Dr. Anthony DeHaas on July 22, 2009. *Id.* ¶¶ 18-19, 23. Dr. DeHaas agreed with Dr. Rives that the hernia was reducible, non-urgent, and non-life-threatening. Therefore, hernia repair surgery was considered elective. *Id.* ¶¶ 23, 30.

The plaintiff's pain has been controlled by two Tylenol administered twice a day. Dr. Rives has never been advised that the plaintiff cannot perform any activities of daily living. Importantly, prior to the plaintiff filing his complaint on September 3, 2009, July 22, 2009, was the last time the plaintiff mentioned his hernia to Dr. Rives; he never complained to Dr. Rives again about his hernia, pain, or discomfort in that area. *Id.* ¶¶ 20-21, 24, 30. According to the defendants, the plaintiff never filed a formal grievance about the hernia situation. *Id.* ¶ 31.

With regard to the plaintiff's allegations regarding his diet and the prison food, when Dr. Rives learned that the plaintiff was a diabetic, Dr. Rives ordered that he receive a diabetic diet. *Id.* ¶ 10. Dr. Rives, however, plays no role in determining what a diabetic diet consists of, developing the food menus, or monitoring the calories in each meal. The prison has contracted with ARAMARK Correctional Services, LLC to provide cafeteria services. ARAMARK employs dieticians to prepare their menus and determine proper calorie counts and foods for a diabetic diet. *Id.* ¶ 11.

When Dr. Rives and the medical staff conducted a full physical of the plaintiff on June 14, 2009, the plaintiff was noted to weigh 185 pounds. Dr. Rives cannot recall if the plaintiff was weighed while shackled but noted that shackles add extra weight. *Id.* ¶ 14.

When the plaintiff was re-weighed on August 5, 2009, he weighed 176 pounds. Dr. Rives testified by affidavit that the weights cannot be compared because of the issue with shackles. However, because of the plaintiff's complaints that he was not getting enough calories, Dr. Rives ordered that the plaintiff be weighed regularly. The plaintiff's weight consistently stayed in the 176 range from August 8, 2009, through September 11, 2009, which is the last recorded weight. This stability, as well as the fact that the plaintiff's diabetes remained well controlled, indicated to Dr. Rives that the plaintiff was getting enough caloric intake to keep his weight and diabetic condition stable. *Id.* ¶ 25.

Defendant Nurse Carol Rodgers first encountered the plaintiff upon his transfer to GCDC on or about June 12, 2009, at which time the plaintiff advised he was a diabetic. The plaintiff was evaluated by Dr. Rives at that time. His blood sugar was checked on this date. Upon the physician's order, the plaintiff was placed on a diabetic diet with a bedtime snack, and a document confirming such was signed by defendant Rodgers (Rodgers aff. ¶ 8; def. Rodgers m.s.j., ex. A). This document is required to be completed before the contracted food services company will provide special diet services to GCDC inmates and/or detainees. Defendant Rodgers is not involved in the preparation or provision of food for GCDC inmates and/or detainees (Rodgers aff. ¶ 8).

On June 24, 2009, defendant Rodgers obtained the plaintiff's weight, and lab worked was performed as ordered by the detention center physician. The plaintiff's blood glucose level was normal based upon the blood work lab results (Rodgers aff. ¶ 13; def. Rodgers m.s.j., ex. A). Defendant Rodgers next encountered the plaintiff due to his request to receive only one Zantac rather than the two pills ordered by the detention center physician on July 20, 2009. Defendant Rodgers was involved in getting a Release of Responsibility form signed by the plaintiff and noted his request in the medical records (Rodgers aff. ¶ 24; def. Rodgers m.s.j., ex. A).

4

The plaintiff had various encounters with other medical providers at the GCDC, which are detailed in defendant Rodgers' affidavit. The nursing staff obtained and recorded the plaintiff's blood sugar readings in accord with the order of Dr. Rives to check the plaintiff's blood sugar weekly. In August 2009, the physician modified his order to check the plaintiff's blood sugar twice weekly. According to his medical records, the plaintiff's blood sugar was checked on June 12, 23, 30; July 6, 13, 20, 21, 27; August 5, 11, 18, 20, 25, 27; and September 1, 3, 8, and 10, 2009. On September 8th, the plaintiff's blood sugar was low, and the plaintiff stated, "there wasn't much worth eating." The plaintiff was given a sandwich, graham crackers, and milk for a snack, and his blood sugar was tested again later during the evening. On September 11, 2009, the physician's order was changed to discontinue weekly weigh-ins and to change blood sugar and blood pressure checks to "as needed" rather than weekly. The plaintiff's blood sugar was checked again on September 18, 2009. On September 23, 2009, the plaintiff was seen by Dr. Rives for left leg and arm pain. The only date on which the plaintiff's blood sugar was outside the normal range was on September 8, 2009.[1] The plaintiff's diabetic condition was controlled during the relevant time period with oral medication and diet. He was not required to take insulin injections to properly regulate his blood glucose levels (Rodgers aff. ¶¶ 9-48).

Defendant Chief Michael A. Schwartz, the Administrator of the GCDC, testified in his affidavit that food service at the GCDC is contracted out to defendant ARAMARK, which employs its own dieticians who prepare the menus. GCDC employees do not plan menus or prepare food. Proper calorie counts and foods for a diabetic diet are determined by ARAMARK (Schwartz aff. ¶ 5). Medical care is contracted through defendant Southeastern Service Group, Inc., who either employs or contracts for care with defendants Nurse Carol Rodgers and Dr. Rives. Special diets, such as a diabetic diet, must be ordered

---

[1] The complaint in this case was signed by the plaintiff on September 2nd and was received by the Clerk of Court in Columbia, South Carolina, on September 3, 2009.

by a physician. Likewise, restrictions on canteen purchases to conform to that diet may be ordered as well. *Id.* ¶¶ 4, 7. It is the policy of the GCDC to obtain medical care for injuries received at the detention center or conditions that are life threatening. It is not their policy to provide surgery for non-emergent, non-life threatening pre-existing conditions, such as a hernia, for pre-trial detainees. *Id.* ¶ 6. The plaintiff's medical records indicate that his hernia is non-life threatening, and repair surgery is considered elective (Cribb defs. m.s.j., ex. D).

Defendants Captain Collette Wineglass and Major Sharon Morton are also employees of the GCDC. Defendant Cribb is the Sheriff of Georgetown County (Schwartz aff. ¶ 3). When an employee of the GCDC receives a grievance about food or medical care, it is forwarded to those departments for handling. Employees do not have the authority to alter prescribed diets or intervene in medical care. Therefore, the inmate may not receive a response from the person to whom he directed the grievance (Schwartz, Wineglass, Morton affs.).

Defendant ARAMARK's Director of East Region, Nutrition & Operational Support Services, Cynthia Irizarry, submitted an affidavit in support of summary judgment in which she testified that the plaintiff's diabetic meals were planned in accordance with nutritional guidelines promulgated by the American Medical Association, the American Diabetic Association, the American Correctional Association, and the United States Department of Agriculture. The plaintiff's diabetic menu also complied with ARAMARK's Diabetic/Calorie Controlled Diet. ARAMARK's dietitian did not have discretion or authority to change the plaintiff's diet plan, as any requested change would have to be authorized by the GCDC medical team (Irizarry aff. ¶¶ 6-9).

Defendant Ernst Walker is the Head Supervisor to the Food Service Director at GCDC. As such, he was responsible for overseeing the preparation and service of the plaintiff's meals as called for by his special diabetic menu. Like Ms. Irizarry, Mr. Walker

lacked discretion or authority to deviate from the dietary restrictions ordered by the GCDC medical team (Walker aff. ¶¶2-6). Further, in response to the plaintiff's written grievance regarding food portions, that some cabbage he was served was wilted, and that the bread he is being served is not wheat bread, Mr. Walker explained that he was obligated to abide by his diet plan and that he could not deviate from it. He also explained to the plaintiff that wheat bread does not have to be brown. *Id.* at ¶¶ 9-10.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

7

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Cribb, Schwartz, Wineglass, and Morton*

In his complaint, the plaintiff made numerous complaints regarding the food he was served at the GCDC and the medical care provided to him. He contends that when he entered custody, he suffered from a hernia, and he requests repair surgery. He states that he also suffers from diabetes, hypertension, high cholesterol, and reflux. He also complains about the variety, quality, and quantity of the food being served at GCDC, and he complains that his canteen privileges are restricted so that can not purchase items containing sugar. The plaintiff claims that he sent grievances regarding these issues to defendants Chief Schwartz, Captain Wineglass, and Major Morton and received no response.

In his complaint, the plaintiff makes no factual allegations against defendant Sheriff Cribb. The plaintiff offers no instances where this defendant violated his

8

constitutional rights. Also, the plaintiff seeks to hold defendants Chief Schwartz, Captain Wineglass, and Major Morton liable for matters that are not their responsibility and over which they have no control. The food and medical services are contracted out to other entities.

Furthermore, the allegations of the plaintiff do not rise to the level of constitutional violation. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53). Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose. *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

As argued by the defendants, the mere fact that the plaintiff disagreed with the handling of the grievances he filed fails to rise to the level of a constitutional violation as against these defendants. These defendants testified that the plaintiff's concerns were forwarded to the appropriate parties by them as they did not have the expertise or authority

9

to alter his diet or medical care. Further, the majority of his complaints deal with personal preference issues. He prefers one type of food over another, and he wants to be able to purchase sweets from the canteen. These complaints do not rise to the level of a constitutional violation.

The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990). The plaintiff's claim against these defendants apparently rests on the third theory. The plaintiff has not made the required showing. As discussed above, the plaintiff's medical records demonstrate he received treatment for his various medical conditions (Medical records 6/12/09-9/30/09). Far from being indifferent, the GCDC made certain through its contracted services that the plaintiff's medical needs were consistently and timely addressed. The plaintiff's blood sugar and weight were routinely checked. The plaintiff admits in his complaint that his blood sugar is controlled (comp. 8). Further, his weight consistently stayed in the 176 range from August 8, 2009, through September 11, 2009, which is the last recorded weight. This stability, as well as the fact that the plaintiff's diabetes remained well controlled, indicated to Dr. Rives that the plaintiff was getting enough caloric intake to keep his weight and diabetic condition stable. The plaintiff was given pain medication for his hernia, and he was sent to an outside surgeon for an examination. The surgeon agreed with Dr. Rives that the hernia was reducible, non-urgent, and non-life-threatening. Therefore, hernia repair surgery was considered elective. Even if the plaintiff insists he should have received different medical treatment, he fails to demonstrate that these defendants' conduct rose to the level of a constitutional violation or even that the medical care provided breached the appropriate standard of care or caused him lasting injury.

The defendants argue that they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's bald allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

Furthermore, to the extent the plaintiff alleges state court claims against the defendants, the court should decline to exercise supplemental jurisdiction as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. § 1367(c).

Based upon the foregoing, the defendants' motion should be granted.

*Dr. Rives*, *Nurse Rodgers, and Southeastern*

As noted above, the plaintiff did not file any opposition to the motions for summary judgment filed by defendants Dr. Rives, Nurse Rodgers, and Southeastern, which employed Nurse Rodgers and contracted Dr. Rives. In his complaint, the plaintiff complains that these defendants were deliberately indifferent to his medical care.

The plaintiff fails to show that these defendants were deliberately indifferent to his serious medical needs. The plaintiff admits that he has received medical care. However, he disagrees with his prescribed diet and wishes to receive elective surgery as a pre-trial detainee. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

12

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

As set forth above, Dr. Rives and Nurse Rodgers submitted affidavits in support of their motions for summary judgment in which they detailed the medical care provided to the plaintiff. Dr. Rives examined the plaintiff on numerous occasions and found that his pre-existing hernia was reducible and was not a surgical emergency. He petitioned the U.S. Marshals Service to send the plaintiff for a surgical consult, which it did. Surgeon Dr. DeHaas agreed that the hernia was reducible and was not a surgical emergency. Thus, hernia repair surgery was considered elective. The plaintiff's blood sugar was checked routinely, and his weight consistently stayed in the 176 range from August 8, 2009, through September 11, 2009. This stability, as well as the fact that the plaintiff's diabetes remained well controlled, indicated to Dr. Rives that the plaintiff was getting enough caloric intake to

keep his weight and diabetic condition stable. Furthermore, the plaintiff does not allege defendant Rodgers did or failed to do anything which resulted in any specific injury.

Assuming the plaintiff's allegations are true as to the medical care he received, the plaintiff has shown nothing more than a disagreement with the medical treatment provided. The plaintiff has failed to show that the defendants were deliberately indifferent to his serious medical needs.

Furthermore, to the extent the plaintiff alleges state court claims against the defendants, the court should decline to exercise supplemental jurisdiction as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. § 1367(c).

Based upon the foregoing, the motions for summary judgment of these defendants should be granted.

### *ARAMARK and Walker*

As noted above, the plaintiff did not file any opposition to the motion for summary judgment filed by ARAMARK and Ernst Walker. The plaintiff's only allegations directed at these defendants concern the food he is served at GCDC. The plaintiff admits that he is being fed three full meals plus an evening snack bag daily; however, he does not like the quality and quantity of these meals. Specifically, he claims that some cabbage he was served at GCDC was wilted; he also believes that the meals he is served do not equal a 2,800 calorie per day diabetic diet as the plaintiff was prescribed by Dr. Rives. As purported evidence to support this claim, the plaintiff claims that the wheat bread he is being served per the diet restrictions is not actually wheat bread because the bread is not brown. His final evidence that he is not being served 2,800 calories is the plaintiff's claim that a menu he wrote out and sent to his cousin was examined by his cousin, who asked someone else, who then told the cousin that the calories were less than 2,800 (comp. 1-8).

As noted in the affidavit of Ms. Irizarry, the plaintiff's diabetic meals were planned in accordance with nutritional guidelines promulgated by the American Medical Association, the American Diabetic Association, the American Correctional Association, and the United States Department of Agriculture. The plaintiff's diabetic menu also complied with ARAMARK's Diabetic/Calorie Controlled Diet. Most importantly, ARAMARK's dietitian did not have discretion or authority to change the plaintiff's diet plan, as any requested change would have to be authorized by the GCDC medical team.

As argued by these defendants, the plaintiff does not allege any damage as a result of their alleged actions. As discussed above, the plaintiff's weight and blood sugars remained stable during his incarceration at the GCDC. Further, he has failed to show that these defendants have knowingly or indifferently kept him from consuming enough daily calories or provided him with substandard food. Based upon the foregoing, the defendants' motion for summary judgment should be granted.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motions (docs. 36, 68, 74, 77, 81) be granted.

s/William M. Catoe
United States Magistrate Judge

April 13, 2010

Greenville, South Carolina

15